ORIENTAL EXPORTERS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

74-2-00352

Before WATSON, *Judge.*

(Dated July 7, 1982)

*Fitch, Kingand Caffentzis,(Richard C. King and James Caffentzis at the trial and on the brief) for the plaintiff.*

*J. Paul McGrath,* Assistant Attorney General; *Joseph Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (Susan Handler-Menahem, at the trial and on the brief) for the defendant.*

WATSON, *Judge:* This action challenges the inclusion of amounts equal to five percent of the invoiced f.o.b. prices in the appraised values of schoolbags imported from Taiwan. The parties have agreed that the disputed amounts are severable from the otherwise correctly appraised export values. The action is therefore limited to the claim of plaintiff Oriental Exporters, Inc. (Oriental) that the five percent was a buying commission it received for services rendered to the Feldco Major Company (Feldco) which, under established law, should not form part of the appraised value.

The Court, after considering the evidence regarding the relationship between Oriental and Feldco finds that plaintiff Oriental has proven by a preponderance of the evidence that it was acting as a buying agent with respect to the imported merchandise.

In reaching this conclusion the Court finds that plaintiff was subject to the control and direction of Feldco and was not, as urged by defendant, an agent of the manufacturers or a buyer and reseller

1

2

of this merchandise. This conclusion is supported by evidence of the contractual relationship between the parties, by proof that Oriental was not otherwise related to Feldco or the manufacturers, and by specific examples of its subjection to the control of Feldco. *J.C. Penney Purchasing Corp.* v. *United States,* 80 Cust. Ct. 84, 95, C.D. 4741, 451 F. Supp. 973 (1978).

The Court finds that a pre-existing buying agency agreement between plaintiff and Feldco, covering merchandise manufactured in Hong Kong and Japan, was, in effect, extended to Taiwan in all principal respects. The single difference, stressed by defendant, that in shipments from Taiwan, Oriental was to be listed as the shipper, did not alter the relationship.

The evidence establishes that Oriental's affiliated office in Taiwan acted on behalf of Feldco and subject to its control. The Taiwan office, on the request of Feldco, or on its own initiative, located manufacturers and informed Feldco of the availability of merchandise and its price. It assisted the President of Feldco in meeting the manufacturers to negotiate the prices and delivery terms of merchandise which he had designed. It made sure that orders were being filed, inspected merchandise during manufacture and arranged for shipping. It did not have the power to order merchandise or change the terms of an order without Feldco's approval. It did not have showrooms or inventories of the imported merchandise. Its only rather minor independent power was the authority to change the shipping vessel so long as the arrival date in the United States was not altered.

Plaintiff also financed purchases made by Feldco in Taiwan by opening a letter of credit against which the manufacturers presented drafts for payment. In addition, it paid shipping and insurance, and sometimes entered the merchandise in the United States, and paid the customs duties. For these latter expenditures, it was reimbursed by Feldco apart from the five percent buying commission.

In the opinion of the Court, these circumstances show the existence of a principal-agent relationship between Feldco and Oriental, the nature of which relationship was not altered by the variety of additional services provided.

The evidence relied on by the defendant in support of its contention that plaintiff was controlled by the Taiwanese manufacturers, or that it bought and sold for its own account was imprecise and was not entitled to great weight. For example, a customs agent's report (Defendant's Exhibit A) stating that one of the manufacturers sold only through agents, to whom it paid commissions, was outweighed by the testimony of Feldco's president that he used plaintiff as a buying agent by choice and the testimony of one of the owners of plaintiff that it never received any payment from the manufacturers. Moreover, the report in question contained nothing specific with respect to the relationship between the manufacturer and either Oriental or Feldco.

In addition, a price list on plaintiff's stationery (Plaintiff's Exhibit 3) did not indicate independent selling by Oriental in view of more persuasive evidence to the contrary, particularly, testimony that it was a price quotation obtained by plaintiff for Feldco from a manufacturer. In the same vein, the appearance of Oriental as the purchaser on the manufacturer's invoices was adequately explained as a requirement of the bank in which plaintiff had opened the previously mentioned letter of credit for payment of the manufacturers. Moreover, the later Special Customs Invoices show Feldco as the purchaser.

Finally, the occasional entry of the merchandise by plaintiff was contemplated by the buying agency agreement and was not inconsistent with its role as an agent of Feldco. In all, the evidence does not show that Oriental bought or sold this merchandise as an independent company or acted as an agent of the manufacturer.

A preponderance of the evidence shows that plaintiff acted as Feldco's buying agent in Taiwan. The disputed five percent of the invoice price represents a *bona fide* buying commission and, as such, should not have been included in the appraised values. *United States* v. *Nelson Bead Co.,* 42 CCPA 175, C.A.D. 590 (1955).

Judgment will enter accordingly.